TRI-STATE COACH LINES, INC., Plaintiff-Appellant, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—89—1233

Opinion filed August 14, 1990.

Olsen & Olsen, Ltd., of Springfield, and Sims, Walker & Steinfeld, P.C., of Washington, D.C., for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Paul J. Maton, of Chicago (Myra L. Karegianes, Special Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

This is an appeal from an administrative review action in which the circuit court affirmed an Illinois Commerce Commission (Il.C.C. or State authority) cease and desist order issued against plaintiff, Tri-State Coach Lines, Inc. (Tri-State). In the same judgment, the circuit court found Tri-State in criminal contempt of court and assessed a fine of $1,000. Plaintiff appeals the entire judgment of the circuit court.

C.W. Limousine Service, Inc. (C.W.), filed a .complaint against Tri-State before the Il.C.C., alleging that Tri-State was operating an intra-state bus passenger service between Midway and O'Hare airports without authorization from the Il.C.C., in violation of section 18c—6103 of the Illinois Commercial Transportation Law (Ill. Rev. Stat. 1985, ch. 95½, par. 18c—6103). Tri-State responded by filing a motion to dismiss C.W.'s complaint on the basis that its operation was authorized by the Interstate Commerce Commission (ICC or Federal authority) and that the State authority did not have subject matter jurisdiction over the action.

The hearing examiner denied Tri-State's motion to dismiss and ordered Tri-State to answer the complaint and submit to discovery. Tri-

State opted to stand by its motion to dismiss. After hearing arguments of counsel, the hearing officer issued her recommended decision ordering Tri-State to cease and desist from operating its bus passenger service between Midway and O'Hare airports.

On June 20, 1988, the Il.C.C. adopted the hearing officer's recommended decision and issued its decision ordering Tri-State to cease and desist. Tri-State petitioned the State authority for reconsideration of its decision, attaching a letter from the Federal authority, dated June 21, 1988, which affirmed Tri-State's right to tack (join routes at common intersecting points) its interstate authorities for the purpose of operating between O'Hare and Midway airports. Nevertheless, on August 17, 1988, the Il.C.C. denied Tri-State's petition for reconsideration.

Thereafter, Tri-State filed a complaint for administrative review in the circuit court (Ill. Rev. Stat. 1987, ch. 110, par. 3—103) and sought a stay of the Il.C.C. order. The motion for stay was denied.

On October 12, 1988, the Il.C.C. filed an emergency petition for enforcement of its cease and desist order, attaching affidavits which established that Tri-State was operating the bus passenger service on October 6 and October 7, 1988. The court ordered Tri-State to show cause why it should not be held in contempt for continuing to operate in violation of the Il.C.C. order. The court heard arguments on both Tri-State's complaint for administrative review of the Il.C.C. order and the Il.C.C.'s emergency enforcement petition.

Tri-State argued that it is authorized to operate the bus route between Midway and O'Hare airports because it holds three Federal certificates issued by the ICC. The three certificates authorize Tri-State to transport passengers in intrastate, interstate and foreign commerce over the following routes:

> Docket No. MC—129038 Sub 1 (Sub 1) authorizes Tri-State to transport passengers between O'Hare International Airport and the Indiana Dunes State Park in Chesterton, IN, with a portion of the route lying over Interstate Highway 294 (IH 294).

> Docket No. MC—129038 Sub 2 (Sub 2) authorizes Tri-State to transport passengers over various regular-routes in and near Chicago. Route 1 travels between Lansing, IL and O'Hare Airport, with travel over IH 294. Route 7 runs between Park Forest, IL and Midway Airport, with travel over IH 294.

> Docket No. MC—129038 Sub 4 (Sub 4) authorizes Tri-State to transport passengers between Midway Airport and Aurora, IL, with travel over IH 294.

It is significant to note that there is no restriction on tacking in any of the Federal certificates issued to Tri-State. Tacking is the act of join-

ing interstate authorities at common intersecting points and operating between those points pursuant to the Federal certificates even though the routes may be intrastate.

On November 23, 1988, the trial court entered its judgment affirming the Il.C.C. cease and desist order, finding Tri-State in criminal contempt of court and assessed a fine of $1,000. It is from this judgment that Tri-State appeals.

I

The principal issue on appeal is whether the Il.C.C. had subject matter jurisdiction to order Tri-State to cease and desist from operating its Midway-O'Hare bus passenger service. Tri-State argues that it was authorized to operate the Midway-O'Hare bus passenger service by virtue of tacking its Subs 1, 2 and 4 ICC certificates at the common point of IH 294. Tri-State contends that the Federal authority that issued its certificates has primary jurisdiction over the interpretation of those certificates. Therefore, the Il.C.C. cease and desist order was issued without subject matter jurisdiction.

The Il.C.C. argues that it had jurisdiction to consider C.W.'s complaint and issue its order against Tri-State because the service at issue was conducted over an intrastate route within the State of Illinois, an area over which the Il.C.C. has jurisdiction. The Il.C.C. concedes that Congress authorized the ICC to grant its carriers certain intrastate operating privileges in conjunction with their interstate routes (49 U.S.C. 10922(c)(2)(B) (1988)), but argues that Tri-State's three Federal certificates do not contain a Midway-O'Hare route. Moreover, the Il.C.C. contends that Tri-State may not tack its Federal certificates to establish the requisite authority to operate the route at issue because "[i]n Illinois, an extension of authority may be applied for but authorities are not 'tacked'." (Il.C.C. order.)

◼ With the enactment of the Bus Regulatory Reform Act of 1982 (Bus Act), Congress authorized the ICC to grant certificates for intrastate routes that are operated as a part of the interstate operation. (49 U.S.C. §10922(c)(2)(B) (1988).) One of the purposes of Congress in the enactment of the Bus Act was to ease the amount of State regulatory interference with intrastate operations of interstate carriers. The Federal government, through the ICC, has preempted the local governments from regulating these intrastate routes. See, *e.g.*, S. Rep. No. 97–411, 97th Cong., 2d Sess. 16, *reprinted in* 1982 U.S. Code Cong. & Admin. News 2323.

◼◼ The Il.C.C. erroneously contends that Tri-State's Subs 1, 2 and 4 certificates do not authorize the Midway-O'Hare intrastate service

route. None of these certificates explicitly authorizes a route between Midway and O'Hare airports. However, the ICC allows its certificated carriers to tack their separate authorities at common intersecting points unless there are specific provisions against tacking noted on the certificate itself. (*Monumental Motor Tours, Inc. v. Greyhound Corp.*, 79 M.C.C. 244, 247 (1959).) Tri-State's Subs 1, 2 and 4 do not contain any tacking restrictions. An examination of these certificates reveals that Tri-State could tack these authorities at their common point of service, IH 294, and come up with the Midway-O'Hare service route. The fact the Il.C.C. does not permit its carriers to tack authorities is irrelevant in this context. At issue is the interpretation of Federal certificates, which do not have any restriction against tacking.

■ Congress has authorized the ICC to grant intrastate and interstate operating privileges to motor common carriers under certain conditions. The Federal authority is vested with primary jurisdiction to review and interpret the scope of operating authority granted by its certificates. "Thus the possibility of a multitude of interpretations of the same Federal certificate by several States will be avoided and a uniform administration of the [Bus] Act achieved." *Service Storage & Transfer Co. v. Virginia* (1959), 359 U.S. 171, 179, 3 L. Ed. 2d 717, 722, 79 S. Ct. 714, 719.

Once Tri-State presented evidence of its Federal certificates which appear to authorize the Midway-O'Hare route, the Il.C.C. should have dismissed C.W.'s petition without prejudice and directed C.W. to pursue its remedy before the Federal authority which issued the certificates to Tri-State. The Federal authority has primary jurisdiction to interpret the scope of operating authority granted by its certificates. Interpretations of Federal operating certificates should be made in the first instance by the authority issuing the certificate and upon whom the Congress has placed the responsibility of action. *Service Storage & Transfer Co. v. Virginia* (1959), 359 U.S. 171, 177, 3 L. Ed. 2d 717, 721, 79 S. Ct. 714, 718; see also *Funbus Systems, Inc. v. California Public Utilities Comm'n* (9th Cir. 1986), 801 F.2d 1120, 1129; *Holland Industries, Inc. v. Division of Transportation* (Mo. 1989), 763 S.W.2d 666, 668.

■ The Il.C.C. contends, in the alternative, that Tri-State has waived its right to have the ICC interpret the scope of operating authority granted by its ICC certificates. After the circuit court entered its judgment affirming the Il.C.C. order, on June 1, 1989, Tri-State petitioned the Federal agency for a declaratory order determining the scope of its operating authority under its Subs 1, 2 and 4 certificates. In its order, the ICC asserted that it had primary jurisdiction to determine the scope of operating authority granted by its certificates and found that

Tri-State was indeed authorized to operate the Midway-O'Hare route under its Federal certificates. The Il.C.C. argues that Tri-State brought this matter to the ICC only after it obtained unfavorable rulings in the Il.C.C., the circuit court and the district court (Tri-State's petition for declaratory judgment dismissed on principles of comity and full faith and credit). However, the Il.C.C. fails to recognize that the ICC has primary jurisdiction over this subject matter. Jurisdiction to hear proceedings cannot be conferred by the election of the parties. (*City of West Frankfort v. Industrial Comm'n* (1950), 406 Ill. 452, 457, 94 N.E.2d 413.) Tri-State did not waive the ICC's jurisdiction.

## II

■ Tri-State contends that the trial court's finding of indirect criminal contempt and assessment of a $1,000 fine was erroneous. To sustain a finding of indirect criminal contempt for the violation of a court order, two elements must be proved: (1) the existence of a valid court order; and (2) a wilful violation of that order. (*People v. Totten* (1987), 118 Ill. 2d 124, 138, 514 N.E.2d 959.) Tri-State maintains that there was no valid court order upon which such a finding could be based.

The trial court based its finding of criminal contempt upon Tri-State's continued operations in violation of the Il.C.C. cease and desist order and the trial court's own order denying Tri-State's application for stay.

■ Contempt will not lie for disobeying an order which is void for want of jurisdiction of the parties or subject matter or because the court has no power to decide the particular matter. (*Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 1028, 385 N.E.2d 829, *appeal denied* (1979), 75 Ill. 2d 589.) Because we have found that the Il.C.C. had no jurisdiction to issue its order against Tri-State, that order is void. The trial court's own order merely denied to stay the operation of this void order. Accordingly, the trial court erred in finding Tri-State in contempt of court and assessing a fine.

For the foregoing reasons, we reverse the judgment of the circuit court and remand for the limited purpose of directing the circuit court to order the Il.C.C. to vacate its cease and desist order and dismiss C.W.'s complaint without prejudice to C.W.'s option to pursue its remedy before the Federal authority.

Reversed and remanded with directions.

HARTMAN and SCARIANO, JJ., concur.