July 9, 1998

No. 2--96--1501 

     

__________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

___________________________________________________________________

THE PEOPLE OF THE STATE  ) Appeal from the Circuit Court 

OF ILLINOIS,                    )  of Jo Daviess County.

                                )

Petitioner-Appellee,       ) 

                                )  

v.                              ) No. 96--CC--1

                                )

NORMAN W. SMEATHERS,       ) 

                                ) Honorable

Respondent and  ) John W. Rapp, Jr.,

Contemnor-Appellant.      )  Judge, Presiding.

___________________________________________________________________

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a hearing, the respondent, Norman Smeathers, was found guilty of indirect criminal contempt and sentenced to 60 days’ imprisonment.  The State initiated the contempt proceedings against the respondent after he attempted to place a lien on the property of Judge William Kelly, who had presided over two traffic cases involving the respondent.  For the sake of clarity, we will refer to the individual trial judges involved in the instant case by name.  On appeal, the respondent argues that (1) Judge John Rapp erred by not recusing himself from the contempt hearing; (2) the respondent was not proved guilty of contempt beyond a reasonable doubt; and (3) the respondent was entitled to a jury trial.  We affirm. 

The facts relevant to the disposition of this appeal are as follows.  On May 24, 1996, the respondent was charged with driving an uninsured vehicle.  On August 11, 1996, the respondent was again charged with operating an uninsured vehicle.  At the time of the second offense, the respondent posted his Illinois driver’s license as bond.  On August 15, 1996, the respondent appeared before Judge William Kelly.  The respondent requested that his driver’s license be returned to him.  Judge Kelly denied this request.  

On August 16, 1996, the respondent sent a document entitled "Original Notice" to Judge Kelly and his wife, Anna Kelly.  The notice indicated that Judge Kelly and his wife were "withholding" the respondent’s property in violation of "Uniform Commercial Code at book 1, Section 207."  The notice indicated that if Judge Kelly and his wife did not respond in 20 days, a default judgment would be entered against them and a "common law" lien would be perfected against their real estate.

On August 19, 1996, Judge Victor Sprengelmeyer ordered the respondent to appear before the trial court to show cause why he should not be held in contempt of court for filing a lien on Judge Kelly’s property.  On August 23, 1996, the respondent appeared before Judge John Rapp on the rule to show cause.  Judge Rapp asked the respondent if he had sent a notice of a lien to Judge Kelly.  The respondent refused to answer Judge Rapp’s inquiries and questioned the trial court’s jurisdiction over him.  Judge Rapp found the respondent in direct criminal contempt and ordered him to be imprisoned for an hour.  However, Judge Rapp rescinded this order when the respondent informed him that he had a minor child with him.  Judge Rapp then ordered the respondent not to file any further documents attempting to create a lien on Judge Kelly’s property.  The respondent informed the trial court that he would not file any such documents.

 On or about September 16, 1996, the respondent sent Judge Kelly a "Notice of Default," indicating that a judgment of default had been entered against Judge Kelly and his wife in the sum of $100,000.  On October 14 and 15, 1996, the respondent also filed complaints with the Judicial Inquiry Board against Judges Kelly, Sprengelmeyer, and Rapp.

On October 17, 1996, the State filed a petition for adjudication of indirect criminal contempt against the respondent.  The State alleged that the respondent had purposely acted in a manner so as to disrupt the court from conducting its business in an orderly fashion.  The State also alleged that the respondent had embarrassed the court, obstructed the court in its administration of justice, and derogated the court’s dignity and authority.  

Also on October 17, 1996, the respondent filed a 
pro
 
se
 "Motion for Change of Venue."  The respondent argued that he could not receive a fair trial before Judge Rapp because Judge Rapp was  a "debtor to a financial transaction to which the [respondent was] the complaintant [
sic
]/secured party, and of which a demand for collection has been made and a default exists."  The respondent also argued that an "extreme conflict of interest" existed between him and Judge Rapp because he had filed a complaint against Judge Rapp with the Judicial Inquiry Board.  The respondent therefore requested that his case be transferred to an alternate judge.

That same day, Judge Rapp considered and denied the respondent’s "Motion for Change of Venue."  Judge Rapp found that the respondent’s motion was untimely because he had not requested a change until after the trial court had already made a substantive ruling.  Furthermore, Judge Rapp found that any conflict that existed was one that the respondent had created.

Following this ruling, Judge Rapp conducted a hearing on the State’s petition.  Judge Kelly testified that he presided over a traffic matter in which the respondent had been charged with driving an uninsured vehicle.  Judge Kelly explained that, after he denied the respondent’s request to return his driver’s license, he began receiving a series of notices from the respondent.  Each of these notices alleged that Judge Kelly and his wife owed the respondent $100,000.  Judge Kelly testified that he had never had any financial dealings with the respondent.

The respondent also testified at the hearing.  The respondent admitted to having sent the notices of lien and default to Judge Kelly and his wife.  The respondent explained that he believed his actions were proper under the law and that he was just attempting to have his driver’s license returned.

At the close of the hearing, Judge Rapp found the respondent guilty of indirect criminal contempt.  After the hearing, the respondent filed a federal lawsuit against Judge Rapp.  The respondent also sent Judge Rapp a 1099 IRS form, indicating that Judge Rapp had received $100,000 in income from him. 

On December 16, 1996, following a sentencing hearing, Judge Rapp sentenced the respondent to 60 days’ imprisonment.  The respondent filed a timely notice of appeal.  

The respondent’s first contention on appeal is that Judge Rapp abused his discretion in not recusing himself from the contempt hearing.  The respondent argues that, because of his federal lawsuit and complaint with the Judicial Inquiry Board against Judge Rapp, Judge Rapp should have recused himself from the case.  The respondent also notes that he served Judge Rapp with a 1099 IRS form.  The respondent contends that Judge Rapp’s recusal was necessary to avoid the appearance of impropriety, bias, and prejudice towards him.  The respondent also argues that Judge Rapp improperly attempted to have the respondent testify "in violation of his constitutional rights."

The State argues that the respondent has waived this issue because he did not raise it during the contempt proceedings or in a posttrial motion.  As the State correctly notes, the right to request a substitution of judges is waived where a party fails to assert it prior to trial or by posttrial motion.  
People v. Wade
, 116 Ill. 2d 1, 9 (1987). 

A review of the record reveals that the respondent never filed a motion to substitute judge or raised this issue in a posttrial motion.  Although the respondent did file a 
pro
 
se
 "Motion for Change of Venue" in which he requested that his case be sent to a different judge, this motion did not conform with the statutory requirements for a motion for substitution of judge under section 114--5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114--5 (West 1996)), as the respondent failed to include an affidavit.  See 
People v. Winchell
, 45 Ill. App. 3d 752, 756 (1977).  However, in the interest of safeguarding the respondent’s right to a fair hearing, we will consider his "Motion for Change of Venue" as a motion to substitute judge and consider the merits of his argument.  See 
People v. Morrison
, 260 Ill. App. 3d at 775, 787 (1994).

The respondent in an indirect criminal contempt proceeding may move for a substitution of judge.  
In re Marriage of Madary
, 166 Ill. App. 3d 103, 106 (1988).  However, the right to substitution is not absolute, and the movant has the burden of showing prejudice on the part of the judge.  
Madary
, 166 Ill. App. 3d at 106.  The lack of impartiality of a trial judge even under extreme provocation cannot be presumed.  
People v. Mercado
, 244 Ill. App. 3d 1040, 1048 (1993).  Reviewing courts should be reluctant in mandating a substitution of judge where the movant’s actions brought about the alleged prejudice, lest it invite future misconduct contrived for that very purpose.  
Mercado
, 244 Ill. App. 3d at 1049.

In the instant case, we do not believe the record indicates any bias or prejudice by Judge Rapp against the respondent.  We believe that the respondent himself, in filing a complaint with the Judicial Inquiry Board against Judge Rapp, was directly responsible for creating any alleged prejudice.  See 
Mercado
, 244 Ill. App. 3d at 1049.  We therefore do not believe that the respondent has met his burden of proving that Judge Rapp was prejudiced against him. See 
In re Marriage of Hartian
, 222 Ill. App. 3d 566, 569 (1991) (respondent failed to demonstrate that trial judge was prejudiced against him where respondent had filed complaint against trial judge with Judicial Inquiry Board).  To hold otherwise would thwart the administration of justice, as it would allow one to escape prosecution by filing frivolous complaints against his trial judges in order to force an endless stream of recusals.  
Hartian
, 222 Ill. App. 3d at 569.  Moreover,  since the respondent did not file the federal lawsuit or serve the 1099 IRS form against Judge Rapp until after the contempt hearing,  we fail to see how these two documents could have prejudiced Judge Rapp against the respondent during the contempt hearing.

We also find meritless the respondent’s argument that the trial court committed an act of prejudice by violating the respondent’s right against self-incrimination.  In proceedings to punish indirect criminal contempt, due process requires that the accused be accorded notice and a fair hearing.  
People v. Waldron
, 114 Ill. 2d 295, 302-03 (1986).  The alleged contemnor must be informed of the charges against him and must be given an opportunity to answer those charges as well as receive a full hearing.  
Madary
, 166 Ill. App. 3d at 105.  After carefully reviewing the record, we do not believe that Judge Rapp violated the respondent’s rights against self-incrimination.  The respondent was not forced to testify at the hearing but was merely afforded the opportunity to answer the charges against him.  See 
Madary
, 166 Ill. App. 3d at 105.  Moreover, the record reveals that the respondent willingly testified during the hearing. 

The respondent next argues that he was not proved guilty beyond a reasonable doubt.  The respondent argues that the State failed to prove that he had the requisite intent to commit indirect criminal contempt.  The respondent contends that it was not his intent to embarrass the court but only to have his driver’s license returned.  The respondent maintains that he reasonably believed that sending notices of lien and default to Judge Kelly and his wife were a proper means to have his driver’s license returned.

It is not the province of this court to retry the defendant.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  (Emphasis in original.)  
Collins
, 106 Ill. 2d at 261, quoting 
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  The sufficiency of the evidence and the relative weight and credibility to be given the testimony of the witnesses are considerations within the exclusive jurisdiction of the fact finder.  
People v. Williams
, 93 Ill. 2d 309, 315 (1982).  A trial court’s finding of willful contempt will not be disturbed on appeal unless there is a clear abuse of discretion.  
Madary
, 166 Ill. App. 3d at 106.

Criminal contempt of court is defined " 'as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute.' "  
People v. Simac
, 161 Ill. 2d 297, 305 (1994), quoting 
People v. L.A.S.
, 111 Ill. 2d 539, 543 (1986).  Before citing one with contempt, a court must find that the alleged contemnor’s conduct was willful.  
People v. Ernest
, 141 Ill. 2d 412, 424 (1990).  The alleged contemnor’s state of mind, however, does not have to be affirmatively proven; the contemptuous state of mind may be inferred from the allegedly contemptuous conduct itself.  
Simac
, 161 Ill. 2d at 307.  The intent may be inferred from the surrounding circumstances and the character of the party’s conduct.  
Simac
, 161 Ill. 2d at 307.

After reviewing the record, we believe that there was sufficient evidence to prove the respondent guilty of contempt beyond a reasonable doubt.  The respondent sent Judge Kelly a notice of lien while Judge Kelly was presiding over two traffic cases involving the respondent.  There was no legal or factual justification for such a lien.  The respondent was later ordered by Judge Rapp to refrain from sending any additional notices or creating any other liens on Judge Kelly’s property.  Despite this order, the respondent sent a notice of default to Judge Kelly, indicating that Judge Kelly was indebted to the respondent for the sum of $100,000.

From such evidence, we believe the trial court could find that the respondent’s actions were contemptuous.  The respondent’s actions hindered the administration of justice by attempting to intimidate Judge Kelly into returning his driver’s license.  See 
Simac
, 161 Ill. 2d at 305.  From such contemptuous conduct, the trial court could infer that the respondent was acting with contemptuous intent.  
Simac
, 161 Ill. 2d at 307.  Despite the respondent’s contention that he believed his actions were legally proper, ignorance of the law is not justification for contemptuous acts.  See 
People v. Powers
, 122 Ill. App. 3d 629, 630 (1984).  Under the circumstances, therefore, we cannot hold that the trial court abused its discretion in finding that the respondent willfully committed a contemptuous act.  See 
Madary
, 166 Ill. App. 3d at 106.

The respondent’s final contention on appeal is that he should have been afforded the right to a jury trial.  The respondent argues that this right attached because he was subject to six months imprisonment and a $500 fine.  However, as the respondent acknowledges, one is entitled to a jury trial in a criminal contempt proceeding only if the penalty 
exceeds
 six months incarceration or if the fine 
exceeds
 $500.  
County of McLean v. Kickapoo Creek
, 51 Ill. 2d 353, 356 (1972); see also 
Madary
, 166 Ill. App. 3d at 105.  Illinois courts have consistently held that the denial of a jury trial in a criminal contempt case in the circumstances here presented does not violate equal protection of the law under either the Illinois or United States Constitutions.  See 
People v. Collins
, 57 Ill. App. 3d 934, 938 (1978) (denial of jury trial in criminal contempt proceeding did not violate equal protection clause of state constitution); 
People v. Martin-Trigona
, 94 Ill. App. 3d 519, 524 (1980) (denial of jury trial in criminal contempt proceeding did not violate equal protection clause of United States Constitution).  Despite the respondent’s invitation to reconsider these authorities, we find no compelling reason to do so.

For the foregoing reasons, the judgment of the circuit court of Jo Daviess County is affirmed.

Affirmed.

THOMAS and RATHJE, JJ., concur.