2 September 1999

No. 2--98--0893 & 2--98--0894 cons. 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE CITY OF ROCKFORD ) Appeal from the Circuit Court

) of Winnebago County.

Plaintiff-Appellee,
 ) 

) 

v. ) Nos. 79--MR--122  

)   79--CH--208

HAROLD SUSKI, )

 ) Honorable

Defendant ) J. Todd Kennedy,

and Contemnor-Appellant. ) Judge, Presiding.

JUSTICE GEIGER delivered the opinion of the court:

Harold Suski appeals from the June 19, 1998, order of the circuit court of Winnebago County denying his posttrial motion after he was found guilty of indirect criminal contempt.  On appeal, Suski argues that the trial court erred in (1) denying his motion to dismiss the contempt proceeding;
 (2) ruling that his affirmative defenses of statute of limitations, 
laches
, equitable estoppel, "void for vagueness," lack of jurisdiction, unclean hands, and mootness did not apply and were not proven; (3) denying him a trial by jury; (4) denying his Rule 237(b) (166 Ill. 2d R. 237 (b)) notice to appear at trial; (5) finding him guilty beyond a reasonable doubt of indirect criminal contempt; and (6) entering an excessive sentence.  We affirm.

The facts relevant to the disposition of this appeal are as follows.  On September 14, 1979, the City of Rockford (the City) filed a petition for preliminary injunction and complaint for  permanent injunction against Suski concerning two properties owned by him located at 409 South First Street and 405 South Third Street in Rockford.  These properties are located in a historical district of Rockford known as Haight Village.  The petition alleged
 that the properties contained too many dwelling units and were public and private nuisances.  The City requested that the trial court order Suski to reduce the number of dwelling units at 405 South Third Street from 8 to 4, and the number of dwelling units at 409 South First Street from 13 to 6.

On October 10, 1979, the trial court granted leave to intervene to 10 individuals who resided in Haight Village ("the intervening plaintiffs").  These individuals are not parties to this appeal.

On October 18, 1979, Suski filed a petition for 
mandamus
 against the City, alleging that the City had failed to issue him certain building permits for the same properties at issue.  On November 20, 1979, the trial court consolidated Suski's 
mandamus
 action with the City's equitable action.  On January 14, 1980, following a hearing, the trial court entered an order granting  Suski's petition for 
mandamus
 and ordering the City to issue the requested permits.  That same day, the trial court denied the City's petition for an injunction and entered judgment on Suski's behalf.

The City subsequently appealed all aspects of the trial court's January 14, 1980, order.  On appeal, this court held that the trial court erred in granting the writ of 
mandamus
 and in denying the City's request for injunctive relief.  See 
City of Rockford v. Suski
, No. 2--80--0089 (1981) (unpublished order under Supreme Court Rule 23) 
(
Suski
 I).  We therefore remanded the case for further proceedings to determine the appropriate injunctive relief.

On July 30, 1981, following the issuance of our mandate in 
Suski
 I, the trial court entered an order granting the City's petition for a permanent injunction.  The order provided that Suski was to:

"[C]ause the building located at 409 South First Street, Rockford, Illinois to be vacated on or before September 1, 1981, until such time as the number of dwelling units therein is reduced to seven (7) units.  That said reduction of units is to be completed by October 1, 1981.  That the Defendant cause the property at 409 South First Street to meet all requirements of "R-5" zoning for a seven (7) unit building."

On September 8, 1981, the intervening plaintiffs filed a petition for a rule to show cause against Suski.  The petition alleged that Suski had failed to vacate the building at 409 South First Street by September 1, 1981, as required by the trial court's July 30, 1981, order.  No ruling was ever made on this petition for a rule to show cause.

No further action was taken in this case until September 9, 1996.  On that date, the City filed a petition for a rule to show cause against Suski, alleging that Suski had willfully failed and refused to comply with the trial court's order.  Specifically, the petition alleged that Suski had failed to reduce the number of units in the building located at 409 South First Street (the property) to seven by October 1, 1981.  The petition also alleged that more than seven units had been present in the property since June 1986.

On July 8, 1997, Suski filed a motion to dissolve the permanent injunction.  Suski argued that he had sold the property to a third party on May 31, 1997, and no longer had an ownership interest in the property.  On July 9, 1997, following a hearing, the trial court issued an order granting the City leave to file a petition for criminal contempt due to Suski's failure to comply with the trial court's order before he sold the property.

On July 21, 1997, the City filed a petition for adjudication of "minor" indirect criminal contempt.  As amended, the petition requested that the trial court find Suski guilty of indirect criminal contempt for his failure to comply with the July 30, 1981, order.  The amended petition requested that Suski be sentenced to six months' imprisonment, be fined $500, and that the City be granted such other relief as may be just and proper.  On August 15, 1997, the trial court denied Suski's motion for jury trial and granted his motion for discovery.

On September 24, 1997, and November 3, 1997, Suski filed identical motions to dismiss, predicated upon section 2--609 of the Code of Civil Procedure (735 ILCS 5/2--609 (West 1996)).  In his motions, Suski argued that the amended petition was barred by the statute of limitations and the doctrines of 
res judicata
 and collateral estoppel.  Specifically, Suski argued that the amended petition was time-barred pursuant to the general statute of limitations found in the Criminal Code of 1961 (720 ILCS 5/3--5(b) (West 1996)).  That section provides for a one-year, six-month statute of limitations in misdemeanor prosecutions. 720 ILCS 5/3--

5(b) (West 1996).  Suski also argued that the amended petition was barred by the doctrines of 
res judicata
 and collateral estoppel.  Specifically, Suski asserted that the petition for a rule to show cause filed by the intervening plaintiffs on September 8, 1981, barred the City's contempt proceeding.  The trial court denied Suski's motions to dismiss.

On November 3, 1997, Suski filed an answer to the City's contempt petition and raised the following affirmative defenses: (1) statute of limitations; (2) 
laches
; (3) equitable estoppel; (4) void for vagueness; (5) lack of jurisdiction; and (6) unclean hands.  On November 3, 1997, the first day of the hearing, Suski also filed a notice to produce pursuant to Supreme Court Rule 237(b) (166 Ill. 2d R. 237(b)).  In this notice, Suski demanded the production of all files kept by all departments of the City concerning the property.

The contempt hearing was held over six days between November 3, 1997, and April 29, 1998.  At the hearing, William Dettmer testified that he was employed by the City from 1977 through 1986 as a code official and was responsible for managing the building code enforcement division of the department of community development.  Dettmer testified that he inspected the property on September 1, 1981, and noted 13 units, 7 of which were occupied.  Dettmer further testified that he did not observe any ongoing construction activity to reduce the number of units.

Various members of the Haight Village Community Fund (the Fund) also testified on behalf of the City.  Joseph Dailing, one of the intervening plaintiffs in 
Suski
 I, testified that he and other residents of Haight Village incorporated the Fund for the purpose of purchasing certain properties from Suski. The Fund purchased the property from Suski at the end of June 1982 pursuant to a contract for deed.   Dailing testified that, at the time the Fund took possession of the property, there were 13 units.  The Fund then worked, using volunteer labor, to reduce the number of units.  Dailing testified that the Fund defaulted on the contract for deed due to financial problems and that the property reverted back to Suski in June 1986.  Dailing testified that, at this time, there were nine units on the property.

Gary Anderson, an architect and Fund member, also testified during the City's case in chief.  Anderson testified that, on the day the Fund took possession, he inspected the property and found 13 units.  Anderson explained that the units had been divided in half and that each unit had a separate kitchen and bathroom.  He testified that the Fund reduced the number of units to nine over a three- to four-year period.  Anderson was also called as a rebuttal witness by the City.  He testified that, when he inspected the property on the day the Fund took possession in June 1982, he observed 13 kitchens, including sinks, refrigerators, and stoves, as well as 13 gas meters on the outside of the building.  No gas lines had been capped off, and all were hooked up to the units.  In addition, all of the sinks were operating.  He further testified that the Fund did not add any kitchens and did not divide or add units during the time it possessed the property, as the Fund's goal was to reduce the total number of units.

Bonnie Henry, successor to William Dettmer, also testified on behalf of the City.  Henry testified that she had been director of the City's building department since July 1986.  She testified that on or about June 4, 1996, Suski filed an application for a permit to install fire doors and to make other repairs to the property.  On this application, Suski indicated that the property had 10 units.  Henry testified that because the requested permit required the approval of the zoning department, she became aware of the trial court's 1981 injunction, leading to the instant prosecution.  Henry testified that the City never gave Suski approval to maintain more than seven units at the property.

Clayton Parker, Jr., an inspector with the City's fire department, testified that he inspected the property on January 31, 1996.  At the time of his inspection, he noted that the property had 10 units, all of which were occupied.

Chandler Anderson also testified on behalf of the City.  Anderson testified that he was a co-owner of Icon Development Group (Icon).  Anderson testified that on May 30, 1997, Icon purchased the property and took possession.  At that time, there were 10 units on the property.

Attorney John Francis Heckinger, Jr., testified on behalf of Suski.  He testified that he represented Suski during the trial and appeal of 
Suski
 I and served as his legal counsel for approximately 10 years.  Heckinger testified that he had purged his files that predated 1988.  However, Heckinger recalled attending a 1981 meeting between Suski and City officials regarding work that needed to be done to reduce the number of units on the property.  Thereafter, on Suski's behalf, Heckinger filed a petition with the City's zoning department seeking to increase the permitted number of units from 7 to 13.  This petition was denied.  Suski later sold the property to the Fund on an agreement for deed.  Heckinger testified that, after the property reverted back to Suski in 1986, he contacted the City to confirm that 10 units were in the building and that the City would not have a problem with that fact.  He testified that City building inspector William Martin advised him that there would not be a problem with Suski's maintaining 10 units; however, Heckinger never received a written confirmation to this effect.

William Martin testified on behalf of Suski that he was employed by the City as a building inspector between 1973 and 1986.  He testified that he was aware of the trial court's July 30, 1981, order.  Although Martin could not recall specifically what the order provided, he recalled inspecting the property in 1981 before it was sold to the Fund.  At the time of the inspection, Martin found seven units.  He further testified that he inspected the property again in 1986 when it reverted back to Suski.  At this time, Martin did not tell Suski that Suski could operate the building with 10 units.

Suski testified that he first acquired the property in 1976.  He testified that, after the injunction was issued on July 30, 1981, he removed six kitchens from the property, including gas stoves and refrigerators.  He also testified that he had relocated the tenants of the property, although some of their personal items remained.  He testified that after he removed the kitchens he rented 7 units prior to selling the property to the Fund.  When he took the property back from the Fund, there were 10 units.  He testified that, after making several phone calls to City officials, he decided not to reduce the number of units to 7 but, rather, to allow all 10 to remain.

Suski testified that he understood the terms of the July 30, 1981, order, which required him to reduce the number of units to seven.  Suski also testified that he believed the order required him to keep the building vacated until he completed the reduction.  Four to five months after the injunction was entered, he applied to the City's zoning board of appeals for a zoning amendment requesting that 13 units be permitted in the building.  He testified that the City inspected the property on various occasions after he took the property back from the Fund and that he believed that City officials had suggested to him that he should rent the property with 10 units.

The trial court found Suski guilty beyond a reasonable doubt of indirect criminal contempt, finding that he willfully failed to abide by the July 30, 1981, order.  The trial court specifically found proof beyond a reasonable doubt that the number of units in the property had never been reduced to seven.  However, the trial court also found that the City had not proven that Suski had failed to vacate the property in accordance with the permanent injunction.

After a sentencing hearing, the trial court sentenced Suski to 30 days' imprisonment, which was stayed pending compliance with public service work.  The trial court also fined Suski $500 and ordered him to pay $2,850 in attorney and witness fees.  The trial court also placed Suski on a one-year conditional discharge.  On June 19, 1998, the trial court denied Suski's posttrial motion.  Suski subsequently filed a timely notice of appeal.

Suski's first contention on appeal is that the trial court erred in denying his motion to dismiss, which was purportedly brought pursuant to section 2--609 of the Code of Civil Procedure (the Code) (735 ILCS 5/2--609 (West 1996)).  At the outset, we note that section 2--609 of the Code concerns supplemental pleadings and not motions to dismiss.  Nevertheless, it is apparent that Suski intended to bring the motions pursuant to section 2--619 of the Code (735 ILCS 5/2--619 (West 1996)).  As we are to review a motion to dismiss according to its grounds, we shall review the merits of the motion to dismiss under section 2--619 of the Code.  See 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 484 (1994).

Generally, section 2--619 affords a means of obtaining a summary disposition of law or easily proved issues of fact.  
Zedella v. Gibson
, 165 Ill. 2d 181, 185 (1995)
.  For purposes of a section 2--619 motion, all well-pleaded facts in the complaint are deemed as true, and only the legal sufficiency of the complaint is at issue. 
 
American National Bank & Trust Co. v. Village of Libertyville
, 269 Ill. App. 3d 400, 403 (1995).  As such, the reviewing court should review the trial court's ruling 
de novo
. 
Downey v. Wood Dale Park District
, 286 Ill. App. 3d 194, 200 (1997).

Suski argues that the trial court erred in refusing to dismiss the amended petition due to the City's failure to prosecute within one year and six months, as required by section 3--5(b) of the Criminal Code of 1961 (720 ILCS 5/3--5(b) (West 1996)).  Alternatively, Suski asserts that the general five-year civil statute of limitations (735 ILCS 5/13--205 (West 1996)) bars the contempt prosecution.

The procedural rules pertaining to civil and criminal cases are not strictly applicable to indirect criminal contempt proceedings unless a particular provision is made specifically applicable by its language.  
In re Marriage of Betts
, 200 Ill. App. 3d 26, 59 (1990).  
The inapplicability of a statute of limitations to contempt proceedings stems from the fact that contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither (
People v. Warren
, 173 Ill. 2d 348, 368 (1996)). 
People ex rel. Chicago Bar Ass'n v. Barasch
, 21 Ill. 2d 407, 409 (1961).  They may best be characterized as 
sui generis
 and may partake of the characteristics of both.  
Warren
, 173 Ill. 2d at 368; 
Barasch
, 21 Ill. 2d at 409.

In this case, Suski has cited no authority that suggests that there is a statute of limitations applicable to contempt proceedings.  Rather, the law in this State provides that there is no statute of limitations applicable to contempt proceedings.  See generally 
Barasch
, 21 Ill. 2d at 409.  As such, the dismissal of the amended petition for statute of limitations would be inappropriate, and the trial court did not err in failing to dismiss the amended petition on that basis.

Suski's motion to dismiss also invoked the doctrines of collateral estoppel and 
res judicata
, citing the petition for a rule to show cause filed by the intervening plaintiffs in 1981, on which the court never ruled.  However, we note that Suski does not address either collateral estoppel or 
res judicata
 in his appellate brief.  We therefore find that these issues are waived and we will not consider them on appeal.  See 155 Ill. 2d R. 341(e)(7).

Moreover, we note that Suski argues on appeal that his motion to dismiss should have been granted based on mootness and the doctrines of 
laches
 and equitable estoppel.  However, we also note that the motion to dismiss the amended petition did not assert  mootness, 
laches
, or equitable estoppel as a basis for dismissal.  Because these arguments for dismissing the amended petition were not raised at the trial level, they are deemed waived.  
Jespersen v. Minnesota Mining & Manufacturing Co.
, 288 Ill. App. 3d 889, 895 (1997).  Accordingly, we hold that the trial court did not err in denying Suski's motion to dismiss.

For his second argument on appeal, Suski contends that the trial court erred in finding that his affirmative defenses did not apply and were not proven.  Suski raised the following affirmative defenses before the trial court:  statute of limitations, 
laches
, equitable estoppel, void for vagueness, lack of jurisdiction, unclean hands, and mootness.  We will consider each of these affirmative defenses in turn.

As previously noted, there is no statute of limitations applicable to a contempt proceeding.  See generally 
Barasch
, 21 Ill. 2d at 409.  Accordingly, statute of limitations cannot serve as an affirmative defense to a contempt charge.

Suski next asserts that the equitable doctrine of 
laches
 bars prosecution of the contempt charge.  Specifically, Suski notes that 15 years elapsed between the issuance of the injunction and the filing of the City's petition for a rule to show cause.

A court has the power to punish for contempt without statutory authority. 
People v. Martin-Trigona
, 94 Ill. App. 3d 519, 522 (1980).  The power to punish for contempt is inherent in the court as an essential incident to the administration of judicial power.  
Martin-Trigona
, 94 Ill. App. 3d at 522.  In determining whether a petition for contempt is time-barred, the trial court may consider the equitable defense of 
laches
.  
Martin-Trigona
, 94 Ill. App. 3d at 522. 

Laches
 is a doctrine that bars relief to a plaintiff where, because of the plaintiff's delay in asserting a right, the defendant has been misled or prejudiced.  
Pettey v. First National Bank
, 225 Ill. App. 3d 539, 545 (1992).  However, where the circumstances indicate that the party knowingly violated a restriction or a right and pressed ahead, suggesting a purpose to proceed regardless of the consequences, 
laches
 may not be used as an affirmative defense.  
Pettey
, 225 Ill. App. 3d at 545.  In general, the application of the doctrine of 
laches
 to bar a suit due to a delay in asserting a right is a matter within the trial court's discretion.  
Pettey
, 225 Ill. App. 3d at 545-46.  Whether a party is guilty of 
laches
 is a question directed to the sound discretion of the trial court, whose decision will not be disturbed on appeal absent an abuse of discretion.  
In re Estate of Bowman
, 140 Ill. App. 3d 976, 979 (1986).

In applying the doctrine of 
laches
 in a contempt proceeding, the circumstances in each case should be carefully examined to determine when the lapse of time in bringing the contempt charges would make it unjust or unfair to compel a respondent to answer the charges.  
Barasch
, 21 Ill. 2d at 412.  Contempt charges may be brought for a series of contemptuous conduct incidents over an extended period of time.  
Barasch
, 21 Ill. 2d at 412.

Upon examination of the record in this case, we do not believe that the trial court abused its discretion in finding that 
laches
 was not proved.  The trial court found beyond a reasonable doubt that Suski had not reduced the number of units to seven by the court-ordered deadline of October 1, 1981.  The record is replete with testimony that Suski still had not reduced the number of units to seven at the time he sold the property to the Fund in June 1982.  There was no dispute that, when Suski again sold the property in 1997, he still had not reduced the number of units to seven.  It is clear from the record that Suski made a series of decisions not to comply with the court order of July 30, 1981.  The ongoing nature of Suski's refusal to comply with the trial court's order over an extended period of time was a sufficient basis to find that 
laches
 was not proven.  See generally 
Barasch
, 21 Ill. 2d at 409.  We therefore do not believe that the trial court abused its discretion in finding that 
laches
 was not proven.

Suski also argues that the City was equitably estopped from prosecuting him because the City had been aware since 1982 that more than seven units existed but took no steps to enforce the injunction prior to filing the instant prosecution.  However, contrary to Suski's assertions on appeal, we do not believe that he established the elements of equitable estoppel at the hearing.

There are six elements of equitable estoppel: (1) there must be words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have had knowledge at the time the representations were made that the representations were untrue; (3) the truth respecting the representations must be unknown to the party claiming the benefit of the estoppel at the time that the representations were made and acted on by him; (4) the party estopped must intend or reasonably expect that his conduct or representations will be acted upon by the party asserting the estoppel; (5) the party claiming the benefit of the estoppel must have in good faith relied upon the misrepresentation to his detriment; and (6) the party claiming the benefit of the estoppel must have so acted because of the representations that he would be prejudiced if the first party is permitted to deny the truth thereof.  
Vaughn v. Speaker
, 126 Ill. 2d 150, 162 (1988).  The purpose of the equitable estoppel doctrine is to prevent a party from taking advantage of his own wrongdoing.  
M.J. Oldenstedt Plumbing Co. v. K Mart Corp.
, 257 Ill. App. 3d 759, 764 (1994).

In this case, Suski's invocation of the doctrine of equitable estoppel is misplaced.  Suski presented no clear evidence that the City represented to him that it would not seek the enforcement of the trial court's July 30, 1981, order.  Similarly, the record is devoid of evidence that the City represented that it would file a motion to dissolve or vacate the order of July 30, 1981.  There was no testimony that this issue even came up during Suski's conversations with City officials.  We do not believe that the trial court erred in finding that the City was not equitably estopped from prosecuting Suski for a violation of the permanent injunction.

We also find unpersuasive Suski's affirmative defense that the amended petition was void for vagueness because it did not specifically allege the elements of a criminal charge.  There are two elements in proving a charge of indirect criminal contempt for the violation of a court order: (1) the existence of a valid court order; and (2) a willful violation of that order.  
Tri-State Coach Lines, Inc. v. Illinois Commerce Comm'n
, 202 Ill. App. 3d 206, 211 (1990).  Therefore, a contempt petition need only allege the existence of a valid court order and a willful violation of that order. See generally 
Tri-State Coach Lines
, 202 Ill. App. 3d at 211.

A review of the amended petition reveals that the City pleaded with sufficient detail to apprise Suski of the charge he was called upon to answer.  The amended petition describes the property and injunction with specificity and attaches a copy of the July 30, 1981, order as an exhibit.  The amended petition also sets forth with particularity the allegations of Suski's contemptuous conduct, including his failure to vacate the property and the existence of more than 13 units at the property.  As we believe that the amended petition sufficiently alleges the elements of indirect criminal contempt for violation of a court order, we do not believe the trial court erred in rejecting the affirmative defense of vagueness.

As an additional affirmative defense, Suski alleged that the trial court lacked subject matter jurisdiction because the amended petition was not verified.  However, contrary to Suski's contentions on appeal, we do not believe the amended petition's lack of verification deprived the trial court of subject matter jurisdiction.  Where a defendant had notice of the charges and an opportunity to answer and be heard, verification of the contempt petition is not essential.  
Debowski v. Shred Pax Corp.
, 45 Ill. App. 3d 891, 905 (1977).

In this case, the record reflects that Suski received a copy of the amended petition and that he filed an answer with affirmative defenses.  The record also reflects that the court conducted a hearing over six days, during which time Suski called witnesses and cross-examined those witnesses called by the City.  Suski clearly had notice of the charges and an opportunity to answer and be heard.

We also find without merit Suski's final affirmative defense of the doctrine of unclean hands.  Suski argued that the City should have been barred from prosecuting the contempt charge because its agents did nothing to compel the Fund to reduce the number of units on the property when the Fund had possession between 1982 and 1986.  The unclean hands doctrine mandates that one seeking equitable relief cannot take advantage of his own wrong.  
Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.
, 128 Ill. App. 3d 763, 767-68 (1984).

Although there was some testimony that the City had contact with Fund members regarding the property between 1982 and 1986, Suski presented no clear evidence that the City made a decision not to seek enforcement of the injunction during the time that the Fund had possession.  Moreover, whether the City came into the prosecution with unclean hands is irrelevant.  In prosecuting the contempt charge against Suski, the City was not seeking equitable relief but was merely seeking to punish for a violation of a court order.  For these reasons, we do not believe the trial court erred in refusing to apply the doctrine of unclean hands.

In addition to the above enumerated affirmative defenses, Suski also raised the issue of mootness.  Specifically, Suski argued that the sale of the property in 1997 to a third party rendered the contempt prosecution moot.  We disagree.  Criminal contempt is punitive in nature and is instituted to punish a contemnor for past contumacious conduct.  
Warren
, 173 Ill. 2d at 368.  Suski's mootness argument misses the very point of this criminal contempt proceeding, which was to punish him for his past failure to abide by a court order.  Were the action brought by the City one of civil contempt, then mootness might be more applicable.  However, as this was not the case, we will not disturb the trial court's ruling in this regard.

Suski's third argument on appeal is that the trial court improperly denied him his right to a jury trial.  A defendant in an indirect criminal contempt proceeding is entitled to a jury trial only if the potential penalty may exceed six months' incarceration or a fine greater than $500.  
People v. Smeathers
, 297 Ill. App. 3d 711, 718 (1998).

In this case, the City's amended petition prayed for a sentence of six months' imprisonment, a fine of $500, and for any additional appropriate relief.  From the beginning of the hearing, there was no possibility that Suski either could have been sentenced to a term of imprisonment greater than six months or received a fine greater than $500.  As such, Suski had no right to a trial by jury. See 
Smeathers
, 297 Ill. App. 3d at 718.

As his fourth argument on appeal, Suski argues that the trial court improperly denied his notice to produce pursuant to Supreme Court Rule 237(b) (166 Ill. 2d R. 237(b)).  The record in this case does not reflect that the trial court issued any ruling concerning Suski's notice to produce.  We note that the responsibility for the proper preservation of the record before the trial court rests on the appellant.  
In re W.L.W.
, 299 Ill. App. 3d 881, 884 (1998).  If the appellant fails to preserve the record for appeal, he waives his right to that record.  
In re W.L.W.
, 299 Ill. App. 3d at 884.  In this case, because there is no record of any ruling by the trial court denying the notice, we are unable to consider Suski's argument on appeal.

As his final argument on appeal, Suski asserts that the trial court abused its discretion in finding him guilty of indirect criminal contempt beyond a reasonable doubt.  The standard of review applicable to an indirect criminal contempt proceeding is  " 'whether, after viewing the evidence in the light most favorable to the prosecution, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.)  
Smeathers
, 297 Ill. App. 3d at 717, quoting 
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  It is not the province of this court to retry the defendant.  
Smeathers
, 297 Ill. App. 3d at 717.
  The sufficiency of the evidence and the relative weight and credibility to be given the testimony of the witnesses are considerations within the province of the finder of fact.  
Smeathers
, 297 Ill. App. 3d at 717.  A trial court's finding of willful contempt will not be disturbed on appeal unless there is a clear abuse of discretion.  
Smeathers
, 297 Ill. App. 3d at 717.  To sustain a finding of indirect criminal contempt for the violation of a court order, two elements must be proved: (1) the existence of a valid court order; and (2) a willful violation of that order.  
Tri-State Coach Lines
, 202 Ill. App. 3d at 211.

After reviewing the record, we believe that the City presented sufficient evidence to prove Suski guilty of indirect criminal contempt beyond a reasonable doubt.  Suski testified at trial that he understood the July 30, 1981, order requiring him to reduce the number of units to seven.  Although Suski testified that he removed certain kitchens from the property prior to selling it to the Fund, that testimony was in direct contradiction to that of Gary Anderson.  Anderson testified that, in June 1982, there were 13 kitchens in 13 separate units.  Anderson's testimony was corroborated by the testimony of several other Fund members, all of whom testified that 13 units existed in June 1982.  In addition, City official William Dettmer testified that 13 units existed on September 1, 1981, and that he did not observe any construction activity at that time.

Considering this evidence, we believe a rational trier of fact could find that Suski willfully violated the court order of July 30, 1981, in failing to reduce the number of units to seven by October 1, 1981.  We cannot hold that the trial court abused its discretion in finding Suski guilty of indirect criminal contempt beyond a reasonable doubt.  See 
Smeathers
, 297 Ill. App. 3d at 717.

Suski also argues that the trial court abused its authority in assessing attorney fees against him.  The standard of review concerning the imposition of a sentence in a criminal contempt proceeding is whether the trial court abused its discretion in imposing the sentence.  
Kaeding v. Collins
, 281 Ill. App. 3d 919, 927 (1996).  A court may properly assess attorney fees as a sanction in a contempt proceeding provided that the fees have been shown to be reasonable through detailed time records submitted to the court.  
Welch v. City of Evanston
, 181 Ill. App. 3d 49, 56 (1989).
 

At the sentencing hearing, Assistant City Attorney John Giliberti testified concerning the attorney and witness fees expended by the City on the contempt proceeding.  The City also introduced a detailed time log listing the date and hours expended on each item of work performed.  The record reflects that the City expended $2,850 in attorney and witness fees between August 1996 and May 1998.  We do not find that an award of attorney fees in this case was an abuse of discretion.  See 
Welch
, 181 Ill. App. 3d at 56.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

THOMAS and RAPP, JJ., concur.