(text box: 1) NO. 5-00-0434

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

MILDRED E. EMRICK, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Union County.

)

v. )  No. 97-L-14

)

FIRST NATIONAL BANK OF JONESBORO ) 

and SCOTT WILKINS, )  Honorable

)  D.D. Bigler,

     Defendants-Appellees. )  Judge, presiding.

________________________________________________________________________

JUSTICE KUEHN delivered the opinion of the court:

Mildred E. Emrick appeals from the trial court's April 14, 1999, and June 14, 2000, orders relative to the defendants' summary judgment motion.  We reverse and remand.

This suit stems from a dispute involving the manner in which the First National Bank of Jonesboro applied the proceeds from a sale of collateral.  On August 20, 1992, Jeff Emrick, who owned and operated a trucking company known as Emrick Trucking, Inc., borrowed $421,252 from the First National Bank of Jonesboro (the Bank) for purposes of debt consolidation.  Jeff Emrick is the son of Mildred E. Emrick.  The August 20, 1992, loan was secured by a security agreement, bearing the same date, between Jeff Emrick, doing business as Emrick Trucking, Inc. (Emrick Trucking), and the Bank.  That security agreement gave the Bank a security interest in several trucks, trailers, and other equipment in the event of a default on the loan.  However, the Bank felt that it needed further guaranties in order to make this loan, and it required Mildred to personally guaranty the August 20, 1992, loan up to $150,000.  On that same date, Mildred signed a guaranty document to which only she and the Bank were parties.  That guaranty was secured by a mortgage on her home.

On January 3, 1994, Emrick Trucking borrowed an additional $30,000 from the Bank to pay bills and expenses.  This loan was not specifically secured.  Mildred was not a party to this loan, and she did not specifically guaranty its repayment.  The original security agreement between Emrick Trucking and the Bank contained language that could be construed as including this second loan.  The security interest Emrick Trucking gave the bank applied to the original loan and to "all other additional indebtedness or liabilities for which [Emrick Trucking] is now or may become liable to [the Bank]."  Mildred's guaranty contained no such similar language.

Sometime during that first quarter of 1994, Emrick Trucking defaulted on both loans.  Apparently without the Bank's consent, Emrick Trucking sold most of the trucks, trailers, and other equipment pledged as collateral on the first loan, raising $343,252.  Proceeds from these sales were given to the Bank.  The Bank applied these proceeds first to pay off the unsecured $30,000 note and then to reduce the outstanding balance owed on the first note.  After taking these steps, $108,000 remained due on the original loan.

Since there was still a deficiency on the original loan, the Bank instituted a mortgage foreclosure action against Mildred.  It appears that Mildred sold a portion of her real estate for $108,917.32, but the record and briefs do not clarify if she sold it pursuant to the foreclosure or otherwise.  In any event, the Bank applied those proceeds to the principal balance still due on the original note.  The Bank dismissed the foreclosure suit for reasons that cannot for certain be determined from the record, although it appears that the Bank dismissed the suit when Mildred offered the Bank an amount equaling the balance owed on the first loan.

Mildred sued the Bank for breach of the guaranty document she had signed.  Specifically, Mildred objected to the Bank's application of the proceeds of the sale of collateral to the unsecured note before the application of any amount to the loan to which her guaranty was connected.  Mildred contended that the Bank's giving priority to the unsecured loan  increased her risk under the guaranty.  The Bank filed a motion for summary judgment claiming that the first loan and security agreement, to which Mildred was not a party, gave it the right to apply the proceeds from the sale of collateral to the subsequent loan.  The Bank also contended that the issues Mildred raised in her suit were compromised by way of an accord and satisfaction, in that Mildred offered the $108,917.32 in full satisfaction of her $150,000 guaranty and the Bank accepted her offer.  

During the pendency of this case, Mildred amended her complaint to add Scott Wilkins, the Bank's president, as an additional defendant.  She essentially made the same allegations against Scott Wilkins as she had made against the Bank.  As the bank president, he was the one allegedly responsible for making the priority determinations when the money from the sale of collateral was presented to the Bank.
(footnote: 1)
 The motion for summary judgment was originally filed in late February 1998 and was later withdrawn and refiled in June 1998.  The motion was set for a hearing on September 30, 1998, at which time the parties were given 30 days in which to file briefs.  By docket entry we know that the trial judge reviewed the documentation filed by Mildred in mid-March 1999.  On April 6, 1999, the trial judge filed his docket entry indicating his intent to grant the Bank's summary judgment motion.  The order was signed by the trial judge and filed on April 14, 1999.  The order contained no basis for the decision.  Mildred appealed that decision to this court.  On August 17, 1999, we dismissed the appeal because Mildred lacked jurisdiction pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), in that the order from which she appealed did not involve all of the parties and the summary judgment order did not indicate that there was no just reason for delaying either enforcement or appeal.   Thereafter, on February 7, 2000, defendant Scott Wilkins filed his motion for summary judgment on the same grounds as those included in the Bank's earlier-granted motion.  The motion was set for hearing on June 7, 2000.  The trial judge entered its order granting Scott Wilkins's summary judgment motion on June 14, 2000.  As with the Bank's order, the trial judge included no reasons for his decision.  Mildred appeals from both orders.

In determining the appropriateness of a summary judgment, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent.  
Purtill v. Hess
, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986).  The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact.  
Myers v. Health Specialists, S.C.
, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992).  On appeal, courts review summary judgment orders 
de novo
.  
Myers
, 225 Ill. App. 3d at 72, 587 N.E.2d at 497.

Simply stated, the Bank's position is that the original security agreement signed by Emrick Trucking allowed it to do whatever it wanted with the collateral proceeds in the event of a default on the loan.  The Bank believes that its position is accurate even with respect to the subsequent loan and that it was specifically allowed to apply the proceeds to whichever loan it deemed appropriate, because of the all-inclusive language of the original security agreement.  Mildred counters that she was never a party to the original security agreement–only to the guaranty.  Consequently, Mildred contends that she cannot be held to the language contained within that security agreement.  She argues that because the Bank paid the balance of the second loan before it reduced the balance owed on the original loan, the amount of money for which she was potentially "on the hook" was increased.  

Will the language of the security agreement allow the Bank to impair Mildred's rights to a portion or all of the guaranteed amount in the remaining collateral proceeds?  We reverse the trial court's orders of summary judgment, hold that the Bank and Scott Wilkins cannot do what they did with the collateral proceeds, and remand this case to the trial court for further consideration.

Upon our review of the documents at issue, it would appear that if we did not consider Mildred's guaranty and were only concerned with the relationship between Emrick Trucking and the Bank, then the Bank could do what it did.  A clause contained within the security agreement applicable to the first loan picks up any subsequent loans.  Such a clause is clearly allowed under the Uniform Commercial Code (Ill. Rev. Stat. 1991, ch. 26, par. 9-204(3) (now see 810 ILCS 5/9-204(2)(c) (West 2000))).  Therefore, the Bank could legally apply the proceeds from the sale of collateral to any loan it selected.

The problem with the application of this theory to this case is that Mildred was never a party to the first or second loan documents, nor was she a party to the security agreement.  By applying the proceeds to the second loan, the Bank increased Mildred's risk under the guaranty in the amount of $30,000.

In oral argument, the Bank acknowledged that its actions increased Mildred's risk by $30,000, but it argued that it was entitled to do so by a key provision contained within her guaranty.  The Bank argues that paragraph four of her guaranty put Mildred on notice as to potential subsequent loans.  The specific language at issue is as follows: "Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of *** [Mildred] hereunder."  The Bank acknowledges that this provision is subject to two separate interpretations.  The Bank argues that the word "indebtedness" should really read "debt," thus allowing the Bank to make additional loans over and above the original amount loaned.  The other interpretation is that the word "indebtedness" refers to the actual amount the Bank loaned initially and that as the debt is paid down, additional amounts could be given to the borrower up to the amount of the original debt.

If there are any doubts relative to the language of a guaranty, those doubts must be resolved in favor of the guarantor.  
Lawndale Steel Co. v. Appel
, 98 Ill. App. 3d 167, 173-74, 423 N.E.2d 957, 963 (1981) (quoting 
Telegraph Savings & Loan Ass'n v. Guaranty Bank & Trust Co.
, 67 Ill. App. 3d 790, 794, 385 N.E.2d 97, 100 (1978)).  Additionally, the guarantor's undertaking pursuant to the guaranty must be strictly construed, and his or her liability cannot be varied or extended beyond the precise terms of the guaranty.  
Lawndale Steel Co.
, 98 Ill. App. 3d at 174, 423 N.E.2d at 963 (quoting 
Telegraph Savings & Loan Ass'n
, 67 Ill. App. 3d at 794, 385 N.E.2d at 100).

In light of these basic tenets of contractual construction, we conclude that the guaranty Mildred signed did not extend to increase her obligation to include the second loan in the amount of $30,000.

The Bank also argues that pursuant to Mildred's guaranty, it had the right to take the first $150,000 upon her son's default.  In other words, it argues that before collecting upon her guaranty, it did not need to wait to see how much money was obtained from the sale of the collateral.  The Bank is correct about this assertion.  However, the Bank further contends that it essentially did Mildred "a favor" by taking the collateral proceeds and then charging her for the balance owed–$108,000.  In essence, the Bank argues that it saved Mildred $42,000.

In making this argument, the Bank misses an extremely important point.  By first paying itself back for the $30,000 loan and then applying the balance to the amount owed under the first loan, $108,000 remained due pursuant to Mildred's guaranty.  If the full amount of the collateral proceeds, $343,252, was applied to the original loan amount without regard to the second loan, Mildred would only have been responsible for the $78,000 deficiency.

In response to this argument, the Bank reiterates its position that it could have merely taken Mildred's $150,000 before it looked to the collateral.  Furthermore, the Bank argues that Mildred has no legal or contractual rights to the excess collateral.  If this was true, then the Bank would serve to profit mightily by not only taking $150,000 from Mildred but also collecting $343,252 from the sale of collateral.  The Bank is clearly not entitled to receive more than the amount of its loan.  Consequently, the Bank's argument is flawed.

The Uniform Commercial Code provides guidance relative to this transaction.  As the guarantor to a secured party (the Bank), Mildred would become subrogated to the Bank's rights and duties relative to collateral.  Ill. Rev. Stat. 1991, ch. 26, par. 9-504(5) (now 810 ILCS 5/9-504(5) (West 2000)).  That section states, "A person who is liable to a secured party under a guaranty *** and who *** is subrogated to his rights has thereafter the rights and duties of the secured party."  Ill. Rev. Stat. 1991, ch. 26, par. 9-504(5).  Once the collateral was sold and the proceeds were in the Bank's possession, Mildred became subrogated to the Bank's rights relative to the collateral.  Simply stated, Mildred would be entitled to the excess, up to the amount that she was required to expend to make the Bank whole, pursuant to her guaranty.

As Mildred did not guaranty the second loan in the amount of $30,000, she could not be responsible for paying it back.  The Bank's actions in first applying the collateral proceeds to the second loan increased Mildred's liability pursuant to her guaranty by the $30,000 and impaired her rights against the collateral in that amount.  Regardless of the contractual rights the Bank had against Emrick Trucking relative to the second loan, the Bank could not impair Mildred's rights.

The Bank also argues that, pursuant to paragraph seven of Mildred's guaranty, she waived any defenses she might have had.  We disagree.  Paragraph seven of the guaranty begins with a general waiver and then more specifically details her waiver of all possible defenses that could be raised by Emrick Trucking or otherwise against the Bank relative to the "indebtedness."  Mildred's arguments are not centered upon the first loan but upon the fact that she did not guaranty the second loan and should not have had to pay the $30,000 loan.  These were not arguments about the legality of the original loan and her guaranty thereof.  At best, Mildred waived any defenses she had relative to the original indebtedness.  Again, to the extent that the term "indebtedness" was subject to two meanings–the original loan amount or the total of both loans, we construe that ambiguity against the Bank.  

The Bank also argues that it reached an accord and satisfaction with Mildred when she paid the remaining deficiency on the original loan, $108,000.

An accord and satisfaction is basically an agreement between the parties that settles a 
bona fide
 dispute over an unliquidated claim.  
A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.
, 243 Ill. App. 3d 905, 911, 611 N.E.2d 619, 623 (1993).  The three elements of an accord and satisfaction are "(1) an honest dispute between the parties as to the amount due at the time payment was tendered; (2) a tender of payment with the explicit understanding of both parties that it is in full payment of all demands; and (3) an acceptance by the creditor with the understanding that the tender is accepted as full payment."  
A.F.P. Enterprises, Inc.
, 243 Ill. App. 3d at 911, 611 N.E.2d at 623.  Additionally, as an accord and satisfaction is grounded in contract law, there must be consideration and a meeting of the minds with the intent to compromise.  
A.F.P. Enterprises, Inc.
, 243 Ill. App. 3d at 911, 611 N.E.2d at 623.  The "intent to compromise" can be inferred from the parties' words and actions.  
A.F.P. Enterprises, Inc.
, 243 Ill. App. 3d at 911, 611 N.E.2d at 623.

After reviewing the record, which included the depositions of both Mildred and Scott Wilkins, we conclude that there is a genuine issue of material fact precluding a summary judgment.  Mildred seemed unclear as to whether or not she disputed the manner in which the Bank applied the proceeds from the sale of collateral.  However, Scott Wilkins was not uncertain.  He testified that Mildred specifically objected to the application of any of the proceeds towards the second $30,000 loan.  He indicated that despite her objections, the Bank proceeded to first extinguish the amount owed on the second loan.  While Scott Wilkins believed that Mildred's $108,000 payment took care of her obligations pursuant to the guaranty that she signed, he testified that if Mildred was still disputing the Bank's planned applications of the collateral proceeds, then all disputes between the parties had not been resolved.  He additionally testified that Mildred never agreed to the application of the collateral proceeds to the $30,000 loan and that the Bank never asked her for permission.  

Based upon the parties' deposition testimony, we find that there is a question as to whether or not there is a 
bona fide
 dispute between the parties.  Additionally, we find that there was no meeting of the minds relative to having the "intent to compromise."  Mildred did not agree to the Bank's application of the proceeds to the $30,000 loan.  Accordingly, there was a genuine issue of material fact regarding whether the Bank and Mildred achieved an accord and satisfaction, and so the summary judgment on that issue was improper.

For the foregoing reasons, the judgment of the circuit court of Union County is hereby reversed, and the cause is remanded.

Reversed; cause remanded.

MAAG, P.J., and WELCH, J., concur.

                                      NO. 5-00-0434

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

MILDRED E. EMRICK, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Union County.

)

v. )  No. 97-L-14

)

FIRST NATIONAL BANK OF JONESBORO ) 

and SCOTT WILKINS, )  Honorable

)  D.D. Bigler,

     Defendants-Appellees. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: September 18, 2001

___________________________________________________________________________________

Justices
: Honorable Clyde L. Kuehn, J.

Honorable Gordon E. Maag, P.J., and

Honorable Thomas M. Welch, J.,

Concur

___________________________________________________________________________________

Attorneys
 D. Keith Kessler, Jr., David M. Foreman, Crain, Miller & Milner, Ltd., 623 E.

for
 Broadway, P.O. Box 867, Centralia, IL 62801

Appellant
 

___________________________________________________________________________________

Attorneys
 Edward Renshaw, Feirich, Mager, Green, Ryan, 2001 West Main Street, P.O. Box

for
 1570, Carbondale, IL 62903

Appellees
 

___________________________________________________________________________________

FOOTNOTES
1:
On appeal, the Bank and Scott Wilkins do not argue their positions in a diverse manner.  Accordingly, in the analysis of the case, where we refer to the Bank, we mean to include Scott Wilkins, even if he is not specifically named.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/18/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.