2023 IL App (2d) 220332-U
No. 2-22-0332
Order filed August 11, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| NATIONSTAR MORTGAGE LLC d/b/a Champion Mortgage Company, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CH-1528 |
| GERALD NORDGREN, as Special Representative for MARIAN HAUSCHILD, a/k/a Marian N. Hauschild a/k/a Marian Louise Hauschild a/k/a Marian Louise Nelson Hauschild a/k/a Marian Louise Nelson; UKNOWN HEIRS AND LEGATEES OF MARIAN HAUSCHILD a/k/a Marian Louise Nelson Hauschild a/k/a Marian Louise Nelson; SECRETARY OF HOUSING AND URBAN DEVELOPMENT; LOUISE KOOPMANN a/k/a Louise Marian Koopmann; LYNN CHRISTINE CLORE; JOHN NELSON HAUSCHILD a/k/a John N. Hauschild; UKNOWN HEIRS AND LEGATEES OF ED HAUSCHILD JR. a/k/a Edward A. Hauschild Jr. a/k/a Edward Arthur Hauschild Jr.; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Louise Marian Koopmann; Lynn Christine Clore; John Nelson | ) ) | Honorable Donna-Jo Vorderstrasse, |

Hauschild, Defendants-Appellants).              )     Judge, Presiding.

_____

## ORDER

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

¶ 1     *Held*:  Defendant-heirs failed to show that plaintiff's issuance of a 1099-C tax form
              precluded confirmation of foreclosure sale.

¶ 2     Defendants, Louise Marian Koopman (Louise), Lynn Christine Clore (Lynn), and John

Nelson Hauschild (John) (collectively, the heirs) appeal the trial court's order granting a motion

to confirm judicial sale filed by plaintiff, Nationstar Mortgage LLC d/b/a Champion Mortgage

Company. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4     We summarize the relevant facts from the record on appeal. On November 9, 2017, plaintiff

filed a complaint to foreclose the mortgage for a property located on North Mill Road in Grayslake,

Illinois (property). Pursuant to the complaint, the mortgagor, Marian Hauschild, had died, and,

after her death, there remained "an outstanding principal balance [for the mortgage in the amount]

of $170,629.71 plus interest, attorney's fees, foreclosure costs, late charges, advances and

expenses incurred by the plaintiff." The complaint further named Louise, Lynn, and John as

defendants, given their status as "possible heir[s]/legatee[s] of the mortgagor." On January 12,

2018, plaintiff amended its complaint to add Gerald Nordgren, a representative of Marian

Hauschild's estate (estate), as defendant.

¶ 5     On March 23, 2018, the circuit court granted John 28 days to appear and answer plaintiff's

complaint. On May 3, 2018, John filed a motion to dismiss, arguing that the matter should be

dismissed because plaintiff, a nonresident of Illinois, failed to file certain security costs prior to

commencing the instant action, as it was required to do under section 5-101 of the Code of Civil Procedure (Code) (735 ILCS 5/5-101 (West 2018)). On May 18, 2018, John withdrew his motion to dismiss, as plaintiff produced a bond for security for costs, effectively mooting John's arguments.

¶ 6     On August 2, 2018, John filed his motion for leave to file his answer *instanter*. Defendant's answer incorporated two affirmative defenses: (1) lack of standing; and (2) "[l]ack of [c]ondition [p]recedent," in that "[p]laintiff did not perform the conditions precedent to foreclosure on the [m]ortgage, as stated in the [m]ortgage." On August 3, 2018, the circuit court entered an order finding that John's answer and affirmative defenses were timely filed.

¶ 7     On September 25, 2018, plaintiff filed its response to John's affirmative defenses, arguing that, as holder of the instant mortgage note, it did indeed have standing to file its foreclosure complaint. Plaintiff further relied on certain statutory authority to dispute defendant's allegations that it "did not perform the conditions precedent to foreclosure of the Mortgage."

¶ 8     On October 11, 2018, plaintiff filed its motion for summary judgment, motion for default order, and motion for judgment of foreclosure.

¶ 9     On February 14, 2019, Louise and Lynn both filed their collective answer to plaintiff's complaint. Their answer alleged the same affirmative defenses as John's earlier answer: lack of standing and lack of condition precedent. Also on February 14, 2019, John filed a late response to plaintiff's motion for summary judgment. In the response, John argued that plaintiff was not entitled to summary judgment, because plaintiff's affidavit of amounts due and owing was "defective." Furthermore, John also argued that his affirmative defenses and answer created issues of fact, precluding an award of summary judgment.

¶ 10     On February 15, 2019, the circuit court entered summary judgment in plaintiff's favor and

against John. Also that day, the court entered an order of default against Louise, Lynn, and the remaining defendants, and entered its judgment of foreclosure.

¶ 11    On February 20, 2019, the heirs collectively filed a motion for extension of time and other relief, seeking an extension of time to file Louise and Lynn's answer and seeking to file John's response *instanter*.

¶ 12    On April 23, 2019, plaintiff filed its notice of sheriff sale, which specified that a foreclosure sale of the property would take place on the morning of May 21, 2019. On May 20, 2019, the heirs filed an "emergency motion to postpone the judicial sale, vacate the default and vacate summary judgment." On May 21, 2019, the circuit court set a briefing schedule for the heirs' motion, while staying the foreclosure sale at least through June 27, 2019. On July 10, 2019, the heirs withdrew their motion to postpone and vacate, and the circuit court stayed the foreclosure sale through September 11, 2019. The sale was later scheduled for September 17, 2019. However, on September 16, 2019, the heirs once again filed an emergency motion to postpone the judicial sale. On September 17, 2019, the circuit court granted the heirs' motion, and the foreclosure sale was stayed through October 17, 2019. In the following months, the circuit court granted two more of the heirs' requests to stay rescheduled foreclosure sales of the property.

¶ 13    Years later, on December 14, 2021, the property was finally sold via foreclosure sale. On February 2, 2022, plaintiff filed its motion for order approving report of sale and distribution and for eviction order. On June 6, 2022, the heirs filed their memorandum in opposition to plaintiff's motion for an order approving the report of sale. In the memorandum, the heirs alleged that, on January 31, 2022, after the sale had already been completed, plaintiff sent the estate an IRS 1099-C tax form. According to the heirs, the 1099-C tax form "discharged $293,546.45 of the [e]state's debt." Reasoning that the underlying debt for the property's mortgage had been discharged, as

evidenced by the issuance of the 1099-C tax form, the heirs argued that "there [was] no longer any debt for the sale to satisfy, so the sale should not be approved." More specifically, the heirs argued that, pursuant to the issuance of the 1099-C tax form, the doctrine of equitable estoppel and a balance of the applicable equities precluded confirmation of the foreclosure sale. On August 19, 2022, the circuit court entered its order confirming the foreclosure sale.

¶ 14    The heirs timely appeal.

¶ 15                                  II. ANALYSIS

¶ 16    On appeal, the heirs raise four arguments as to how the circuit court erred in confirming the foreclosure sale. First, the heirs argue that the doctrine of accord and satisfaction barred "the debt's collection," presumably in reference to the sale confirmation. Second, the heirs argue that the doctrines of "[r]elease and/or discharge bar further collection." Third, the heirs contend that "[e]quitable estoppel *** prevent[ed] the confirmation of [the] foreclosure sale." Fourth, the heirs contend that principles of equity precluded confirmation of the foreclosure sale. We examine these arguments in turn.

¶ 17                            A. Standard of Review

¶ 18    As a preliminary matter, however, we discuss our standard of review, as the parties disagree as to what standard we should apply. According to the heirs, the issues presented in this appeal are solely legal and not factual, meaning the applicable standard of review is *de novo*. On the other hand, plaintiff argues that "motions to confirm judicial sales are reviewed for an abuse of discretion."

¶ 19    We agree with plaintiff. "The standard of review of a circuit court's approval of a judicial sale is an abuse of discretion." *Deutsche Bank National Trust Co. v. Iordanov*, 2016 IL App (1st) 152656, ¶ 31. While the heirs are not incorrect in asserting that purely legal issues are typically

reviewed *de novo*, the heirs overlook the fact that "the Illinois Mortgage Foreclosure Law [citation] has been construed as conferring on the circuit courts broad discretion in approving or disapproving judicial sales." *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, ¶ 54. Pursuant to this discretion, our supreme court has unambiguously found that "[a] court's decision to confirm or reject a judicial sale under the statute will not be disturbed absent an abuse of that discretion." *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178-179 (2008). Accordingly, while the heirs' arguments on appeal do seem to be legal in origin, the fact remains that they are challenging the court's approval of the sale. In this specific context, our supreme court's case law suggests that we must analyze whether the circuit court's confirmation of the foreclosure sale constituted an abuse of discretion. *Id.*

¶ 20                               B. Accord and Satisfaction

¶ 21     Moving onto the merits, we first find that the doctrine of accord and satisfaction did not preclude the circuit court from affirming the instant judicial sale.

¶ 22     "Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm [a judicial foreclosure] sale." 735 ILCS 5/15-1508(b) (West 2020).

> "Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale." *Id.*

¶ 23     Furthermore, "[a]n accord and satisfaction is a contractual method of discharging a debt or claim." *Saichek v. Lupa*, 204 Ill. 2d 127, 135 (2003). "To constitute an accord and satisfaction

there must be: (1) a bona fide dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement." *Id.* Otherwise put:

"where parties honestly dispute an amount owed and due between them and the debtor tenders a [payment] with the explicit understanding of both parties that the [payment] is in full payment of all demands, the acceptance and negotiation of the [payment] is an accord and satisfaction, if the creditor takes the [payment] with notice of the condition upon which the [payment] is tendered." *In re Estate of Castro*, 289 Ill. App, 3d 1071, 1077 (1997).

¶ 24    The heirs assert that "[t]hese elements are met here," where: "(1) [t]he parties had been vigorously contesting the foreclosure," presumably indicating the existence of a *bona fide* dispute; "(2) [plaintiff] satisfied the outstanding debt when it sent [the estate] the form 1099-C," establishing "consideration and a meeting of the minds;" and "(3) [plaintiff] accepted the consequences of issuing the form 1099-C."

¶ 25    At the outset, we first note that, because the heirs did not argue the existence of an accord and satisfaction before the trial court, the argument is now forfeited. "Issues not raised in the trial court are forfeited and may not be raised on appeal." *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 40.

¶ 26    Forfeiture aside, the heirs' arguments as to a supposed accord and satisfaction are risible. Again, in order for there to have been an accord and satisfaction, a debtor must first have tendered some form of a payment or consideration to a creditor, who then must accept the payment or consideration as fulfillment of a debt. *Id.* With this in mind, the heirs make no argument that they tendered any payments or other forms of consideration to plaintiff to satisfy the overdue mortgage debt. Instead, citing *Emrick v. First National Bank of Jonesboro*, 324 Ill. App. 3d 1109, 1116

(2001), the heirs argue that plaintiff's issuance of the 1099-C tax form to the estate constituted " 'a tender of payment with the explicit understanding of both parties that it [was] in full payment of all demands.' " This argument in particular is nonsensical. Clearly, a 1099-C tax form does not constitute "a tender of payment," and even if it did, the doctrine of accord and satisfaction contemplates a payment made by a debtor to a creditor in satisfaction of a debt. *Id.* Here, on the other hand, the heirs confusingly argue that plaintiff—the creditor—tendered a payment (in the form of a routine tax form) to the estate—the debtor—in order to satisfy a debt that the estate owed to plaintiff. This confusing argument encroaches upon frivolity and is not supported by *Emrick.* 324 Ill. App. 3d at 1116.

¶ 27 Furthermore, the heirs make no attempt to argue that the second element under *Saichek*— an unliquidated sum at the heart of the dispute—exists here. Unliquidated sums, which we equate as being synonymous with unliquidated damages, are:

> "damages which cannot be ascertained by a computation or calculation. [Citation.] Or to state the rule otherwise, unliquidated damages are such as are unascertained, as those arising out of torts as well as those following breaches of contract, where the amount of the damage has not been, by agreement, determined." *American Laundry Machinery Co. v. Barr*, 176 Ill. App. 519, 523–24 (1912).

Here, a judgment of foreclosure had been entered, the property had been sold at a Sheriff's sale, and the sale was awaiting the court's approval. Upon the entry of judgment, the amount of damages was no longer unliquidated but liquidated, not only because it was easily calculable, but because it had been reduced to judgment. See *Hulke v. International Manufacturing Co.*, 14 Ill. App. 2d 5, 24 (1957) ("When the jury returned a verdict of $300,000 for the plaintiff, Delbert Hulke, and $1,000 for plaintiff, Stuart Hulke, *their unliquidated claims for damages for personal*

*injuries then became liquidated* by and merged in the verdict and judgments for that amount.") (Emphasis added.) Under the factual circumstances of this case, an accord and satisfaction was not a viable procedure as a matter of law. For all of these reasons, we reject the heir's contentions that the doctrine of accord and satisfaction precluded the circuit court from confirming the foreclosure sale.

¶ 28                                    C. Release and Discharge

¶ 29    Second, we disagree with the heirs' arguments that plaintiff released or discharged the instant mortgage when it issued the 1099-C tax form to the estate.

¶ 30    Once a mortgage debt becomes satisfied, the relevant mortgagee or assignee must file a release of the mortgage lien. See 765 ILCS 905/2 (West 2020). Specifically,

> "every mortgagee of real property, his or her assignee of record, or other legal
> representative, having received full satisfaction and payment of all such sum or sums of
> money as are really due to him or her from the mortgagor, and every trustee, *** the notes,
> bonds or other indebtedness secured thereby having been fully paid after September 7,
> 1973, shall make, execute and deliver to the mortgagor or grantor in a deed of trust in the
> nature of a mortgage, his or her heirs, legal representatives or assigns, or person authorized
> by such mortgagor, grantor, heir, legal representative, or assign, an instrument in writing
> releasing such mortgage *** or shall deliver that release to the recorder or registrar for
> recording or registering. If the release is delivered to the mortgagor or grantor, it must
> have imprinted on its face in bold letters at least 1/4 inch in height the following: 'FOR
> THE PROTECTION OF THE OWNER, THIS RELEASE SHALL BE FILED WITH
> THE RECORDER OR THE REGISTRAR OF TITLES IN WHOSE OFFICE THE
> MORTGAGE OR DEED OF TRUST WAS FILED.' The recorder, or registrar, upon

receipt of such a release and the payment of the recording and registration fee, shall record

or register the release." *Id.*

A mortgage may only be released pursuant to this method. *Id.*; *Federal National Mortgage Association v. Kuipers*, 314 Ill. App. 3d 631, 671-72 (2000). "The release of a mortgage extinguishes the lien of the mortgage and bars an action for foreclosure." *Petkus v. St. Charles Savings and Loan Association*, 182 Ill. App. 3d 327, 330 (1989).

¶ 31 Here, asserting that "there does not appear to be authority setting forth the elements of either 'discharge' or 'release,' " the heirs nonetheless contend that "[c]ommon sense suggests, however, that one or both defenses apply here." Specifically, the heirs argue:

"By issuing the form 1099-C, [plaintiff] informed the heirs and the federal

government that it was releasing the Estate's debt. Had [plaintiff] sent the 1099-C by

mistake, or sent it without realizing its possible implications, it could have withdrawn it.

Despite having a year to do so, it has not."

Given plaintiff's supposed failure to withdraw the 1099-C form, the heirs reason that plaintiff has consented to "release[] the Estate from its obligation to pay the debt."

¶ 32 We disagree. For one matter, the heirs have forfeited this argument by failing to support it with pertinent authority. Pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), an appellant's brief must include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, *with citation of the authorities* and the pages of the record relied on." A party forfeits an argument by failing to support it with pertinent authority. *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 19.

¶ 33 In arguing that plaintiff released or otherwise discharged the estate's mortgage debt, the heirs cite no authority establishing what a discharge or release is, what prerequisites must be met

in order for there to be a discharge or release, or what the effect of a discharge or release has on a mortgage. Instead, the heirs haphazardly assert that no "authority [exists] setting forth the elements of either [a] 'discharge' or 'release,' " despite the fact that an entire section of the Mortgage Act (765 ILCS 905/0.01 *et seq.* (West 2020)) (Act) specifically addresses mortgage releases and explicitly sets forth their prerequisites, as set forth above. 765 ILCS 905/2 (West 2020). Still, even if the heirs did not forfeit the argument, they alleged no facts establishing that these pertinent requirements—as set forth in the Act—were met, and Illinois case law is clear in providing that any release of a mortgage must comply with the Act. *Kuipers*, 314 Ill. App. 3d at 671-72. Even more, while the heirs repeatedly portray the instant issue as being one of first impression in our state, Illinois caselaw has already established that the issuance of a 1099-C tax form "is not a means of accomplishing an actual discharge of a debt" in and of itself, completely foreclosing the heirs' arguments on the matter. *In re Estate of Hofer*, 2015 IL App (3d) 140542, ¶ 22.

¶ 34       Alternatively, citing *In re Crosby*, 261 B.R. 470, 474 (D. Kan. 2001), the heirs argue that plaintiff's issuance of the 1099-C tax form was "analogous to assigning the [mortgage] debt to the IRS," and that it would therefore "be improper to allow [plaintiff] to collect a debt that now belongs to the IRS." Again, we disagree. It is true that the *Crosby* court *did* note that that, in certain respects, a 1099-C was "analogous" to an assignment of debt to the IRS, as the form allows the IRS to effectively collect proceeds—in the form of taxes—on a debt once debtors "report the discharge of indebtedness income to the IRS and pay tax on it." *Id.* However, even if we were to agree that a 1099-C tax form is similar to an assignment in this one respect, the heirs point to no authority whatsoever establishing that a 1099-C tax form carries the same *legal effect* as an assignment, so as to presumably preclude confirmation of the foreclosure sale. Accordingly, this

argument is forfeited too. *Kurtz*, 2015 IL App (2d) 140252, ¶ 19. In fact, upon our review, authority exists rejecting such an argument. *F.D.I.C. v. Cashion*, 720 F. 3d 169, 180 (Kan. 2020) (1099-C tax form was insufficient to establish an assignment of mortgage). For all of these reasons, we reject the heirs' arguments that, by issuing the estate the 1099-C tax form, plaintiff released or discharged the estate's mortgage debt, effectively barring confirmation of the foreclosure sale.

¶ 35                                    D. Equitable Estoppel

¶ 36    Third, the circuit court correctly concluded that the doctrine of equitable estoppel did not bar confirmation of the judicial sale. "Equitable estoppel may be defined as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001).

> "To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Id.*, 313-14.

"The purpose of the equitable estoppel doctrine is to prevent a party from taking advantage of his own wrongdoing." *City of Rockford v. Suski*, 307 Ill. App. 3d 233, 245 (1999).

¶ 37    Here, the heirs argue that, "[e]ven if the form 1099-C did not discharge the [e]state's debt, [plaintiff's] premature issuance of the form means that it is equitably estopped from further collection." In support of this argument, the heirs claim that the six aforementioned elements of equitable estoppel have respectively been met here, in that:

"(1) [Plaintiff] misrepresented the status of the Estate's debt by sending the heirs a form 1099-C titled 'Cancellation of Debt,' stating the amount of debt discharged as $293,546.45, and (2) thereafter continued with foreclosure proceedings, indicating that it knew its representations in sending the form were false. (3) The heirs did not know or have any reason to know that the form 1099-C did anything but discharge the debt. The most prominent words on the form are "Cancellation of Debt," the cancelled debt is described as the mortgage, and none of the fine print contradicts the only possible conclusion receiving this form can support: that the debt was discharged. [Citation.] (4) If the Estate was obliged to file a return, [plaintiff] intended that the Estate report the discharged debt, so that the IRS could 'compare the amount of discharged debt reported by various institutions with the amount of discharged debt reported by individuals[,]' thus confirming [plaintiff's] representations to the IRS that the debt had been discharged. [Citation.] (5) The Estate had no choice but to rely on the information provided in the form 1099-C, as the form requires the recipient to report the discharged debt as gross income or suffer sanctions. (6) The Estate was prejudiced when the trial court approved the report of sale. Not only did it lose its property, but [plaintiff's] issuance of the form 1099-C might create tax liabilities."

¶ 38    We disagree. Once again, the fifth requisite element of equitable estoppel requires "the party claiming estoppel [to] reasonably rel[y] upon the [false] representations in good faith to his or her detriment." *Suski*, 307 Ill. App. 3d 233, 245. While asserting the existence of this element, the heirs' claim that "[t]he Estate had no choice but to rely on the information provided in the form 1099-C, as the form requires the recipient to report the discharged debt as gross income or suffer sanctions." Even if we were to agree that the 1099-C tax form *did* contain certain misrepresentations—a finding we expressly do not make—the heirs must show that they followed those misrepresentations to their own detriment for equitable estoppel to apply. *Id.* Instead, however, the heirs only assert that they were forced to rely on the representations made in the 1099-C form, without ever even alleging that their reliance led to their detriment. Accordingly, the heirs have failed to show that the doctrine of equitable estoppel should operate to preclude confirmation of the foreclosure sale.

¶ 39                              E. Equitable Considerations

¶ 40    Fourth, the heirs have failed to show that equitable considerations should have precluded the circuit court from confirming the foreclosure sale. Again, a circuit court may deny confirmation of a foreclosure sale where "justice was not otherwise done." 735 ILCS 5/15-1508(b) (West 2020). This language represents "a codification of the court's power to vacate a sale 'where unfairness is shown that is prejudicial to an interested party.' " *BMO Harris Bank, N.A. v. Wolverine Properties, LLC*, 2015 IL App (2d) 140921, ¶ 26 (citing *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 19).

¶ 41    Here, the heirs briefly argue that, while "Illinois has not adopted a firm position on what effect a form 1099-C has on a debtor's continued liability," "courts elsewhere have held that is inequitable to allow a creditor to collect a debt after issuing the form," citing *Crosby*, 261 B.R. at

474; *Amtrust Bank v. Fossett*, 223 Ariz. 438 (2009); and *Franklin Credit Management Corp. v. Nicholas*, 73 Conn. App. 830 (2002). The heirs urge us to follow these cases, but they do not explain how they provide guidance to the issue here. Additionally, the heirs essentially rehash their earlier argument that the 1099-C tax form effectively absolved the mortgage debt, and the heirs ambiguously accuse plaintiff of seeking to "double dip" certain, unspecified tax benefits to the estate's detriment.

¶ 42  Once more, the heirs' arguments are forfeited. As we have stated above, Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1., 2020) requires parties to support their arguments with "citation of the authorities." "[C]itations to authority that set forth only general propositions of law and do not address the issues presented do not constitute relevant authority for purposes of Rule 341(h)(7)." *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889, ¶ 54. Compliance with Rule 341(h)(7) requires more than a bare citation to cases or other authority; parties must also "provide *** analysis of [such] cases or a cohesive legal argument how they may be applied to the instant facts." *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875-76 (2010).

¶ 43  Here, the heirs urge us to find that confirmation of the foreclosure sale was inequitable due to plaintiff's issuance of the 1099-C tax form. While the heirs suggest that *Crosby*, *Fossett*, and *Nicholas* all require such a finding, this portion of their argument contains no discussion whatsoever as to the present facts and circumstances in those cases, as necessary for us to determine whether we should follow those cases' purported holdings, as represented by the heirs. While the heirs appear to expect us to research these cases ourselves in order to find our own reasons to reverse the circuit court's ruling, "[t]he appellate court is not a depository into which the appellant may dump the burden of argument and research." *In re Marriage of James & Wynkoop*, 2018 IL App (2d) 170627, ¶ 37 (citing *In re Marriage of Petrick*, 2012 IL App (2d)

110495, ¶ 38). Because the heirs' arguments on the matter do not comply with Rule 341(h)(7), the arguments are forfeited. *Id.*[1]

¶ 44    Forfeiture aside, we note that the heirs' argument makes little practical sense. While not entirely clear to us, the heirs appear to reason that, because the 1099-C tax form was issued after the foreclosure sale but *before* confirmation of the sale, plaintiff cannot finalize the sale, despite the fact that the sale had already been completed by the time the estate received the 1099-C tax form. The heirs therefore appear to conclude that, as a result of the allegedly premature 1099-C tax form, plaintiff now may *never* collect upon the underlying mortgage debt, meaning the heirs can retain the property indefinitely, completely free of charge. It strains credulity to suggest that such an outlandish result would be equitable. For all these reasons, we reject the heirs' arguments that certain, equitable considerations precluded confirmation of the foreclosure sale.

¶ 45                                    III. CONCLUSION

¶ 46    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 47    Affirmed.

---

[1]Additionally, the heirs' arguments as to the tax ramifications are undeveloped and subject to forfeiture. *Id.* Indeed, the heirs provide us with no meaningful discussion as to how plaintiff's issuance of the 1099-C tax form constituted an unwarranted "double dip," or how the issuance of the 1099-C tax form put the estate at risk of potential, improper "taxes and penalties."